IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*(Northern Division)*

| | | |
|---|---|---|
| DR. AMR FAWZY<br>56 Kent Street<br>Scituate, Massachusetts 02066 | * * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-16-CV-3363 |
| WAUQUIEZ BOATS SNC<br>ZI Rue du Vertuquet<br>59960 Neuville en Ferrain, France | * * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED VERIFIED COMPLAINT

Plaintiff, DR. AMR FAWZY (hereinafter, "FAWZY"), by and through his attorneys, Alexander M. Giles, Imran O. Shaukat, and Semmes, Bowen & Semmes, for its Amended Verified Complaint against Defendant WAUQUIEZ BOATS SNC (hereinafter, "WAUQUIEZ"), alleges upon information and belief as follows:

1. This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the breach of a maritime contract, for breach of warranty, for strict liability/products liability under the general maritime law, for negligent design and construction of a vessel, for failure to warn, for intentional misrepresentation due to the concealment and non-disclosure as to a vessel, for intentional infliction of emotional distress, and, generally speaking, pursuant to admiralty tort jurisdiction.

2. At all times material hereto, Plaintiff FAWZY was and still is a citizen of the State of Massachusetts, with an address of 56 Kent Street, Scituate, Massachusetts 02066.

3. At all times relevant hereto, Defendant WAUQUIEZ was and still is a foreign business entity duly organized and existing under the laws of France, with an address at ZI Rue du Vertuquet, 59960 Neuville en Ferrain, France.

## FACTUAL BACKGROUND

4. On or about June 15, 2011, Plaintiff FAWZY entered into a Sales Contract with Defendant WAUQUIEZ to build a PILOT SALOON 55 vessel (hereafter "the Vessel"). *See* Sales Contract, attached hereto as Exhibit 1.

5. The parties also entered into an "Addendum to Sales Contract" on that same date that provided for certain amendments and modifications to the terms of contract that required certain continuing obligations of both parties as to the delivery of the Vessel and the periodic possession and use of the Vessel thereafter by WAUQUIEZ at the Cannes Boat Show in Cannes, France and the Genoa Boat Show at Genoa, Italy. *See* Addendum to Sales Contract, attached as part of Exhibit 1.

6. Upon information and belief, WAUQUIEZ took the Vessel to the Cannes Boat Show in Cannes, France and to the Genoa Boat Show in Genoa, Italy during the Fall of 2011.

7. The Vessel was finally delivered to Plaintiff FAWZY on December 20, 2011 in Port Camarque. However, it was delivered without a certificate of construction of the builder (or certificate of compliance), in violation of Clause 1.6 of the Sales Contract.

8. Upon obtaining delivery of the Vessel in France by WAUQUIEZ, Plaintiff FAWZY was informed that everything was fine with the Vessel and that he would be able to safely transit it across the Atlantic Ocean back to his home near Boston, Massachusetts.

9. Unbeknownst to Plaintiff FAWZY, though, WAUQUIEZ knew prior to the initial delivery of the Vessel to Plaintiff FAWZY that there were "some problems" with it and that it was potentially unsafe to sail across the Atlantic.

10. During Plaintiff FAWZY's initial voyage across the Atlantic, he and his crew experienced a calamitous failure of the boom that subjected them to a near death experience. The boom and main sail were rendered inoperable, and the Vessel was forced to drift at the mercy of the Atlantic Ocean for much of the remainder of the voyage in order to allow Plaintiff and the crew to conserve the remaining fuel for use when only absolutely necessary. Plaintiff FAWZY and his crew were able to miraculously guide the Vessel into Saint Martin Island in the Caribbean.

11. In June 2012, a Captain who was on board the Vessel for purposes of inspecting the Vessel was knocked to the deck, was nearly thrown into the water, and was injured by the boom when the main sail parted from its line while underway.

12. In July 2012, an initial repair of the boom was performed. Later in 2012, a company retained by WAUQUIEZ was able to assess the suspected cause of the failure and concluded that it was likely due to the line drive system for the boom and main sail and that related inadequacies with the boom lifting angle and a halyard created too much tension on the boom and main sail.

13. WAUQUIEZ attempted repairs, but in February 2013 Plaintiff FAWZY discovered that the problems with the main sail were still present.

14. Over the next three years, the Vessel experienced numerous recurring problems pertaining to the boom, the main sail, the head sail, the winch system for the main sail, the reefing line, the mandrel and furler for the main sail, the flex section of the main sail track, the

welding of the boom gooseneck bracket, and the air conditioning and water pumps, among other things, many of which only became apparent while the Vessel was underway with Plaintiff onboard, which resulted in a clear danger of death and/or personal injury to Plaintiff and others onboard the Vessel.

15. Despite the periodic attempts by WAUQUIEZ to address the defects and make any required repairs or to effect any replacement of the defective components, the problems persisted.

16. Plaintiff FAWZY retained counsel in France during the summer of 2013, who authored a demand letter to WAUQUIEZ on August 30, 2013. *See* Letter from the law firm of Revel Basuyaux Pourre (with inserted English translations), dated August 30, 2013, attached hereto as Exhibit 2.

17. Defendant WAUQUIEZ never responded to the August 30, 2013 letter of counsel.

18. At the end of 2013, Plaintiff FAWZY instituted a lawsuit in France against WAUQUIEZ. The Complaint in France included allegations as to the breach of the Sales Contract and as to breach of warranty, but also includes allegations as to claims of negligent design and construction, for strict liability/products liability due to defective products and components that WAUQUIEZ is unable and unwilling to replace and that have subjected Plaintiff and others to unreasonable danger of death and/or personal injury, and for "mental distress."

19. Plaintiff FAWZY's suit in France against Defendant WAUQUIEZ seeks the return of the purchase price of the Vessel, it seeks other, related expenses caused by the repetitive but unsuccessful attempts to repair or replace the defective components, it seeks

4

damages for the "mental distress" suffered by Plaintiff, and for attorneys fees. That suit is currently still pending but unresolved as of October 2016.

20. As best as can now be estimated, Plaintiff FAWZY has incurred damages that can be calculated in the amount of $1,177,786.19. This figure is calculated as follows: $1,127,323.95 (purchase price of Vessel in Euros converted to USD at exchange rate in effect on December 20, 2011), plus $43,653.92 (total of invoices alleged on page 5 of French Complaint), plus $6,808.32 (cost of unexpected marina storage in France due to defective condition of Vessel's components, in Euros converted to USD at exchange rate in effect on August 30, 2013).

21. In addition, Plaintiff FAWZY has also suffered damages in tort, as a result of personal injury, and due to the infliction of emotional distress by WAUQUIEZ in an amount of at least $75,000.00 as best as can now be determined, but to be fully determined and calculated in accordance with the expected discovery and evidence in this matter.

22. Despite due demand, Defendant WAUQUIEZ has refused and/or otherwise failed to pay the amounts claimed by Plaintiff FAWZY.

23. Since August 30, 2013, prejudgment interest (at the rate of 6% per annum) has been incurred on the principal due in the amount of $220,713.96.

24. Plaintiff FAWZY estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting this claim may exceed $100,000.00.

25. In all, the claim for which Plaintiff FAWZY sues in this action, as near as presently may be estimated, totals **$1,573,500.15**, no part of which has been paid by Defendant WAUQUIEZ. Plaintiff specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure Plaintiff.

## REQUEST FOR RULE B RELIEF

1. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff believes that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, of a vessel (or vessels), equipment, tackle, appurtenances, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, and/or letters of credit, of, belonging to, due or for the benefit of Defendant WAUQUIEZ BOATS SNC (collectively hereinafter, "ASSETS"), including, but not limited to, ASSETS in its name and/or being transferred for its benefit at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

2. The total amount sought to be attached pursuant to the above is **$1,573,500.15**.

WHEREFORE, Plaintiff DR. AMR FAWZY prays:

a. That process issue in accordance with Supplemental Rule B(1) of the Federal Rules of Civil Procedure to restrain and attach all tangible or intangible property of Defendant, up to and including **$1,573,500.15** including, but not limited to, a vessel (or vessels), equipment, tackle, appurtenances, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, and/or letters of credit, of, belonging to, due or being transferred from or for the benefit of Defendant WAUQUIEZ BOATS, including, but not limited to, ASSETS in its name and/or being transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and

6

Garnishment issued herein; and

b. That Defendant be cited to appear and answer all and singular the matters aforesaid, and that the Plaintiff may have a judgment for the amount of its damages with interest and costs; and

c. That Defendant, alternatively, be ordered to give security to Plaintiff for Plaintiff's claim currently pending in France in the amount of at least **$1,573,500.15**, or, in the event that Defendant is unable to give such security, that the vessel (or vessels), equipment, tackle, appurtenances, or any other non-liquid ASSETS be condemned and sold to provide security for all sums awarded to Plaintiff in the French proceeding; and

d. That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including, but not limited to, the recognition and enforcement of any award or judgment entered against the Defendant in the French proceedings; and

e. That this Court grant to Plaintiff such other and further relief as the justice of this cause may require and that this Court may deem just and proper.

                /s/
              Alexander M. Giles, Esquire, Fed. Bar No. 25474
              Imran O. Shaukat, Esquire, Fed. Bar No. 30134
              Semmes, Bowen & Semmes
              25 S. Charles Street, Suite 1400
              Baltimore, Maryland 21201
              (410) 576-4882
              (410) 539-5223 – facsimile
              agiles@semmes.com
              ishaukat@semmes.com
              Attorneys for Plaintiff, Dr. Amr Fawzy

## VERIFICATION

1. I am a Principal with the law firm of Semmes, Bowen & Semmes, attorneys for Plaintiff in this action.

2. I have read the foregoing Amended Verified Complaint and know the contents thereof. I verify under solemn affirmation that the facts alleged in the foregoing Amended Complaint are true and accurate to the best of my knowledge, information, and belief.

3. The sources of my information, and the grounds for my belief, are based upon communications, information, and documentation provided to me by the client and/or by other counsel also representing the client.

4. Plaintiff is a citizen of Massachusetts, and, therefore, is not readily available in the District to make this verification. I am authorized by Plaintiff to execute this verification.

Pursuant to 28 U.S.C. §1746, I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of October, 2016.

_____
Alexander M. Giles

B1801988.DOC