IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DR. AMR FAWZY,                          *

     Plaintiff,                        *

      v.                             *          Civil Action No.: RDB-16-3363

WAUQUIEZ BOATS SNC,                     *

     Defendant.                        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Dr. Amr Fawzy ("Plaintiff" or "Fawzy") has brought this "admiralty and maritime" action against Defendant Wauquiez Boats SNC ("Defendant" or "Wauquiez"), pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure, alleging "a claim for the breach of a maritime contract, for products liability under the general maritime law, and pursuant to admiralty tort jurisdiction." Verified Compl., ¶ 1, ECF No. 1.[1] At Plaintiff's request, this Court issued an Order of Issuance of Process of Maritime Attachment (ECF No. 4), authorizing the United States Marshals Service to seize a Wauquiez Pilot Saloon 48 sailboat owned by Defendant and located in Annapolis, Maryland. Via separate Order Appointing Substitute Custodian (ECF No. 5), this Court appointed the Master and crew of that vessel as substitute custodians of the property. Currently pending before this Court is Defendant's Motion to Dismiss Verified Complaint, Dissolve Orders of Attachment and Appointing Substitute Custodian, Release Vessel, and For Sanctions,

---

[1] As discussed herein, despite filing this action as a maritime case, Plaintiff has failed to establish maritime jurisdiction.  Accordingly, this action shall be dismissed.

Attorneys Fees, Costs, and Damages (ECF No. 12).  This Court conducted a hearing[2] on the

pending Motion on October 12, 2016.  For the reasons stated herein, Defendant's Motion to

Dismiss Verified Complaint, Dissolve Orders of Attachment and Appointing Substitute

Custodian, Release Vessel, and For Sanctions, Attorneys Fees, Costs, and Damages (ECF

No. 12) is GRANTED IN PART and DENIED IN PART.  Specifically, the Verified

Complaint shall be DISMISSED, the Orders of Attachment and Appointing Substitute

Custodian shall be DISSOLVED, and the vessel shall be RELEASED.   However,

Defendant's request for sanctions, attorneys fees, costs, and damages shall be DENIED.

## BACKGROUND

In ruling on a motion to dismiss, this Court must accept the factual allegations in the

plaintiff's complaint as true and construe those facts in the light most favorable to the

plaintiff.  *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Harris v.*

*Publish Am., LLLP*, No. RDB-14-3685, 2015 WL 4429510, at *1 (D. Md. July 17, 2015).

Plaintiff Dr. Amr Fawzy ("Plaintiff" or "Dr. Fawzy") is a citizen of the State of

Massachusetts.  Verified Compl., ¶ 2, ECF No. 1.  Defendant Wauquiez ("Defendant" or

"Wauquiez") "is a foreign business entity duly organized and existing under the laws of

France."  *Id.* at ¶ 3.  "On or about June 15, 2011, [Dr. Fawzy] entered into a Sales Contract

[Pl.'s Ex. 1] with [Wauquiez] to build a PILOT SALOON 55 vessel [("Fawzy Vessel")]."  *Id.*

at ¶ 4.  On that same date, the parties entered into an "Addendum to Sales Contract" [Pl.'s

Ex. 2], which provided "certain amendments and modifications to the terms of contract that

---

[2] "After receiving notice of Supplemental Rule B attachment, the defendant is entitled to contest the attachment at a prompt hearing pursuant to Rule E(4)(f)."  *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 541 (4th Cir. 2013) (citing Fed. R. Civ. P. Adm. Supp. R. E(4)(f)).

required certain continuing obligations of both parties," including the use of the Fawzy Vessel by Wauquiez at the Cannes Boat Show in Cannes, France and the Genoa Boat Show at Genoa, Italy.[3] *Id.* at ¶ 5.

The Fawzy Vessel was delivered to Dr. Fawzy in Port Camarque, France on December 20, 2011, but was delivered "without a certification of construction of the builder (or certificate of compliance)," allegedly in violation of Clause 1.6 of the Sales Contract." *Id.* at ¶ 6. "Over the next two years, including while fulfilling the terms of the added commitments for possession and use of the Fawzy Vessel, the Fawzy Vessel experienced numerous problems pertaining to the main sail, the foresail, and other components of the Fawzy Vessel, many of which only became apparent while the Fawzy Vessel was underway with [Dr. Fawzy] onboard, which resulted in great danger to [his] life."[4] *Id.* at ¶ 7. Despite Wauquiez's "periodic attempts . . . to address the defects and make any required repairs or to effect any replacement of the defective components, the problems persisted." *Id.* at ¶ 8.

Therefore, Dr. Fawzy "retained counsel in France during the summer of 2013, who authored a demand letter" to Wauquiez on August 30, 2013 [Pl.'s Ex. 2]. *Id.* at ¶ 9. However, Wauquiez never responded to that letter of counsel. *Id.* at ¶ 10. Shortly thereafter, Dr. Fawzy filed suit in France against Wauquiez, "seeking return of the purchase price of the Vessel and other, related expenses caused by the repetitive but unsuccessful

---

[3] At this Court's October 12, 2016 hearing, counsel for Dr. Fawzy clarified that Wauquiez showed the Fawzy Vessel at the Cannes and Genoa boat shows in the fall of 2011, *before* Dr. Fawzy took delivery of the boat.

[4] At the hearing on October 12, 2016, counsel for the Plaintiff represented that this was a "near death experience" on the seas of the Atlantic Ocean because Dr. Fawzy and his crew were forced to float with the tide during periods of time following the alleged problems with the vessel. These facts were not specifically alleged in the Verified Complaint but, as discussed herein, they do not affect this Court's ruling.

attempts to repair or replace the defective components." *Id.* at ¶ 11. That suit remains pending. *Id.*

Dr. Fawzy estimates that he has experienced damages in the amount of $1,134,132.27 USD, the sum of the vessel's purchase price ($1,127,323.95 USD) and the "cost of unexpected marine storage in France due to defective condition of Vessel's components" ($6,808.32 USD). *Id.* at ¶ 12. Additionally, Dr. Fawzy claims that "Since August 30, 2013, prejudgment interest (at a rate of 6% per annum) has been incurred on the principal due in the amount of $211,041.73" and that "the legal expenses and costs of prosecuting this claim may exceed $100,000." *Id.* at ¶¶ 14, 15. Therefore, Dr. Fawzy seeks a total award of $1,445,174.00 USD. *Id.* at ¶ 16.

The United States Boat Show started on October 6, 2016 in Annapolis, Maryland. Mot. to Dismiss, p. 1, ECF No. 12. Wauquiez was displaying a brand new vessel at the show ("Wauquiez Vessel"). *Id.* That same day, Dr. Fawzy filed the Verified Complaint in this action (ECF No. 1). He claims that this is "a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract, for products liability under the general maritime law, and pursuant to admiralty tort jurisdiction." Verified Compl., ¶ 1, ECF No. 1.

Also on October 6, 2016, upon motion of Dr. Fawzy, this Court issued an Order of Issuance of Process of Maritime Attachment, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (ECF No. 4) and an additional Order appointing the Master and crew of the Wauquiez Vessel

located in Annapolis, Maryland as the Substitute Custodian (ECF No. 5).   The Waquiez

Vessel was seized by the United States Marshals Service on October 7, 2016.   Mot. to

Dismiss, p. 1, ECF No. 12.   Pursuant to this Court's Orders, "the general public, boat show

staff, and others (except Wauquiez and its agents and dealers) were not permitted on board,"

which Wauquiez now contends "effectively ruin[ed] the boat show for and caus[ed] great

embarrassment to Wauquiez."   *Id.*   Following the close of the Boat Show, the Wauquiez

Vessel was moved to Bert Jabin's Yacht Yard in Annapolis, Maryland, pursuant to this

Court's Order (ECF No. 13).

<u>STANDARDS OF REVIEW</u>

I.      <u>Motion to Dismiss Verified Complaint for Lack of Maritime Jurisdiction</u>

Under 28 U.S.C. § 1333, United States District Courts have original and exclusive

jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction."   28 U.S.C. § 1333(1);

*see also* U.S. Const. art. III, § 2, cl. 1 ("The judicial power shall extend to . . . all Cases of

admiralty and maritime Jurisdiction.").   A Motion to Dismiss a Complaint for lack of subject

matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, may

proceed either as a facial challenge, asserting that the allegations in the complaint are

insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the

jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187,

192 (4th Cir. 2009) (citation omitted). With respect to a facial challenge, a court will grant a

motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts

upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D.

Md. 2005).  A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

II.   <u>Motion to Vacate Attachment</u>

"After receiving notice of Supplemental Rule B attachment, the defendant is entitled to contest the attachment at a prompt hearing pursuant to Rule E(4)(f)." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 541 (4th Cir. 2013) (citing Fed. R. Civ. P. Supp. Rule E(4)(f)).  "To avoid vacatur of attachment, it is the plaintiff's burden to show that '1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.' " *Id.* (quoting *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006)).  "[T]o plead a prima facie admiralty case pursuant to Supplemental Rule E, 'the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.' " *Id.* (quoting Fed. R. Civ. P. Adm. Supp. R. E(2)(a)).  "The burden to show why continued attachment is proper is the plaintiff's to bear." *Id.* (citing *See Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010).

<u>ANALYSIS</u>

I.    <u>The Plaintiff Has Failed to Establish Maritime Jurisdiction</u>

    A.    <u>Maritime Jurisdiction Does Not Extend to Contracts to Build or Sell a Vessel</u>

The Defendant objects that this matter is "not a maritime claim" but is simply "a breach of warranty claim of a contract to build a pleasure vessel."  Mot. to Dismiss, p. 3, ECF No. 12.  It is well-established that a contract to build a vessel, or a contract for the sale of a vessel, is not a maritime contract and, therefore, fails to establish maritime jurisdiction. *See, e.g., The Francis Donald Thames Towboat Co. v. The Francis Donald Cummins*, 254 U.S. 242 (1920); *North Pac. S. S. Co. v. Hall Bros. Marine Ry. and Shipbuilding Co.*, 249 U.S. 119 (1919); *Richard Bertram & Co. v The Yacht Wanda*, 447 F. 2d 966, 967 (5th Cir. 1971); *Twin City Barge & Towing v. Aiple*, 709 F.2d 507 (8th Cir. 1983).  The United States Court of Appeals for the Fourth Circuit affirmed this principle in *Flota Maritima Browning de Cuba v. Snobl*, 363 F.2d 733 (4th Cir. 1966), observing that "the prevailing rule has been that a contract for the sale of a ship is not a maritime contract."  *Flota*, 363 F.2d at 735.

The Plaintiff concedes that a contract for the sale of a vessel is not a maritime contract, but argues that the contract in this case is an exception because the Addendum to the Sales Contract "included provisions that required certain continuing obligations of both parties as to the delivery of the [Fawzy] Vessel and the periodic possession and use of the [Fawzy] Vessel by Wauquiez at the Cannes Boat Show in Cannes, France and the Genoa Boat Show at Genoa, Italy."  Pl. Response, p. 7, ECF No. 14.  This aspect of the Addendum, Plaintiff contends, "amounts to a charter agreement between the parties," which establishes maritime jurisdiction with respect to the contract.  *Id.*

7

"The charter of a vessel . . . is maritime." *Flota*, 363 F.2d at 735.   However, as clarified at this Court's hearing on the pending motion, the parties did not enter into a charter agreement.  The Addendum does not include the word "charter," and is titled simply Addendum to "Sales Contract."   Addendum, Pl. Ex. 1, p. 22, ECF No. 1-1.   Rather, the Defendant showed the Fawzy Vessel at the Cannes and Genoa boat shows in the Fall of 2011, prior to Plaintiff's taking delivery of the vessel.[5]

B.      The Plaintiff Has Failed to Allege Any Injury Sufficient to Raise a Tort Claim

Alternatively, Dr. Fawzy contends that his claims, raised both in this case and in the pending litigation in France, "are largely based on products liability due to defective components, strict liability sounding in tort, and tort jurisdiction related thereto, such as the negligent design and construction of the Wauquiez Pilot Saloon 55 and the failure to warn[6]." Pl. Response, p. 8, ECF No. 14.   He argues that "[a]ll of these types of claims provide a valid basis for admiralty jurisdiction."   *Id.* (citing *Dudley v. Bayou Fabricators*, 330 F. Supp. 788, 791 (S.D. Ala. 1971); *McKee v. Brunswick Corp.*, 354 F.2d 577 (7th Cir. 1965)).

While it is true that certain tort claims provide a basis for admiralty jurisdiction, it has been well-established that they require some form of alleged personal injury or property damage.   In the *Dudley* case relied upon by Plaintiff, the United States District Court for the Southern District of Alabama specifically clarified that "[w]hether the action be called products liability, breach of implied warranty sounding in tort or tort on navigable waters, if

---

[5] Counsel for the Plaintiff stated at the hearing on October 12, 2016 that this was not his strongest argument.
[6] Plaintiff claims in his Response to the pending Motion that "[i]t is possible that if discovery and depositions were permitted in this matter regarding Wauquiez's possession and use of the Vessel" at the Cannes and Genoa shows, "it would likely reveal that Wauquiez obtained certain knowledge and developed concerns as to the boat, its design, and the defective components installed thereon prior to it being delivered to Plaintiff." Pl. Response, p. 7, ECF No. 14.

the action is based on a negligent act or omission by the manufacturer or builder *that is the proximate cause of subsequent personal or property injury*, liability attaches and is actionable under admiralty." *Dudley*, 330 F. Supp. at 791 (emphasis added).

The United States Supreme Court clearly reiterated this long-standing principle of admiralty law in *E. River S.S. Corp v. Transamerica Delaval*, 476 U.S. 858 (1986).  In that case, the Court affirmed dismissal of an action where the only claimed injuries were to turbine engines, the allegedly defective products, and no personal injury or property damage was alleged.  *E. River S.S. Corp.*, 476 U.S. at 876.  The Court concluded that "[d]amage to a product itself is most naturally understood as a warranty claim" and that "whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss."  *Id.* at 872, 876.

Dr. Fawzy's complaint in this case falls within the ambit of the *East River* opinion. He contends that he has alleged injury, including a "near death experience in the middle of the Atlantic due to the defective product and components [and] personal injury to a Captain in 2012 while onboard the Vessel due to the recurring problems with the boom and main sail."  Pl. Response, p. 9, ECF No. 14.  However, the Supreme Court in *East River* specifically considered "permit[ting] recovery for a 'near miss,' where the risk existed but no calamity occurred," and rejected that approach. *E. River S.S. Corp.*, 476 U.S. at 862.  In attempting to avoid the clear mandate of the *East River* opinion, the Plaintiff can only allege that the Captain was "injured" by being hit with the boom.  This common occurrence on sailboats does not approach the type of tort injury anticipated in the Supreme Court's opinion in the *East River* case.  For these reasons, Plaintiff has failed to establish maritime

jurisdiction. Accordingly, the Verified Complaint shall be dismissed. Furthermore, because Plaintiff has failed to state a maritime claim, the Rule B attachment in this case shall be vacated, and the Wauquiez Vessel shall be released. *See supra Aqua Stoli Shipping Ltd.*, 460 F.3d at 445 ("To avoid vacatur of attachment, it is the plaintiff's burden to show that . . . it has a valid prima facie admiralty claim against the defendant.").

## II.    The Defendant is Not Entitled to Sanctions, Attorneys Fees, Costs, or Damages

Given that the "Annapolis Boat Show is the single most important event for the business of selling sailboats in the United States" and this proceeding prevented Wauquiez from showing the Wauquiez Vessel to the public or members of the press for most of the show, the Defendant contends that this was a malicious action. Mot. to Dismiss, p. 11-12, ECF No. 12. The Defendant contends that there was no logical reason for prohibiting access to the vessel as it was "blocked in by the floating docks and other boats at the Show" and, therefore, could not go anywhere. *Id.* at 12.

According to Patrick Bloch, Director of Sales & Marketing for Wauquiez Boats, "Plaintiff has been heard to say on more than one occasion that his goal was to prevent Wauquiez from ever importing another boat to the United States." *Id.* (citing Bloch Aff., Def. Ex. 1, ECF No. 12-1). Defendant contends that "Wauquiez has suffered significant damage," "[t]hey were unable to show their boat to members of the public" despite the fact that "[m]embers of the press, including Cruising World magazine, wanted to review the Wauquiez Vessel as a potential Boat of the Year candidate," and "[t]he brand suffered significant embarrassment in the industry, as word quickly spread through the boat show of

the seizure of the Wauquiez Vessel." *Id.* Accordingly, the Defendant requests that a hearing be scheduled to assess the damages incurred by Wauquiez.

"A vessel is wrongfully arrested if the claimant acted in bad faith, malice, or gross negligence." *Fid. Bank PLC v. N. Fox Shipping N.V.*, No. WDQ-05-0871, 2010 WL 4117003, at *3 (D. Md. Oct. 19, 2010) (citing *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir.1937); *Ocean Ship Supply, Ltd. v. M/V Leah*, 729 F.2d 971, 974 (4th Cir.1984)). Although Plaintiff has failed to establish maritime jurisdiction, there is no indication that the Plaintiff "acted in bad faith, malice, or gross negligence" by seeking Rule B attachment. This Court rejected a similar claim in *Fid. Bank PLC.* Like the Plaintiff in this case, the plaintiff in *Fid. Bank PLC* "properly filed a verified complaint." Additionally, while there was a question in *Fid. Bank PLC* as to whether an action against the Defendant supporting arrest of the vessel had been filed, it is undisputed in this case that Plaintiff has brought an action against the Defendant in France, which was pending at the time of the attachment and remains pending, and Plaintiff submitted his motion for attachment of the Wauquiez Vessel based on a "good faith determination" that he had raised a maritime claim. *Fid. Bank PLC,* 2010 WL 4117003 at 4. Plaintiff has indicated that he requested attachment of the vessel at the start of the boat show only because it is his "understanding that this is the first time that Wauquiez has attempted to bring a boat into the United States." Pl. Response, p. 11, ECF No. 14. There are clearly legal issues in this case, including this Court's interpretation of the Supreme Court's opinion in *E. River S.S. Corp v. Transamerica Delaval*, 476 U.S. 858 (1986) and its progeny. It simply cannot be said that Plaintiff's counsel proceeded in "bad faith, malice, or

gross negligence" in the pursuit of this litigation.   Accordingly, Defendant's request for sanctions, attorneys fees, costs, and damages shall be denied.

CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Verified Complaint, Dissolve Orders of Attachment and Appointing Substitute Custodian, Release Vessel, and For Sanctions, Attorneys Fees, Costs, and Damages (ECF No. 12) is GRANTED IN PART and DENIED IN PART.   Specifically, the Verified Complaint shall be DISMISSED, the Orders of Attachment and Appointing Substitute Custodian shall be DISSOLVED, and the vessel shall be RELEASED.   However, Defendant's request for sanctions, attorneys fees, costs, and damages shall be DENIED.

Dated:          October 14, 2016

_____/s/_____

Richard D. Bennett
United States District Judge