IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DR. AMR FAWZY                    *

      Plaintiff,                *          Civil Action No. RDB-16-3363

v.                               *

WAUQUIEZ BOATS SNC,              *

      Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Dr. Amr Fawzy ("Plaintiff" or "Fawzy") initially brought this "admiralty and maritime" action against Defendant Wauquiez Boats SNC ("Defendant" or "Wauquiez") on October 6, 2016, alleging that a vessel he contracted to buy from Wauquiez was defective. (ECF No. 1.) Proceedings in this Court moved quickly thereafter, with an Order for the Process of Maritime Attachment and Garnishment issued that same day, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. (ECF No. 4.) Five days later on October 11, 2016, Wauquiez filed a Motion to Dismiss the Verified Complaint and Dissolve the Order of Attachment. (ECF No. 12.) The next day, this Court held a hearing on the Motion. (ECF No. 15.) Unbeknownst to this Court, on October 14, 2016—one hour before this Court issued a Memorandum Opinion and Order granting the Motion to Dismiss for lack of subject matter jurisdiction (ECF Nos. 19, 20)—Plaintiff filed an Amended Complaint (ECF No. 17). Rather than alerting this Court, though, Plaintiff filed an appeal to the United States Court of Appeals for the Fourth Circuit. *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451 (4th Cir. 2017).

1

The Fourth Circuit then remanded the case back to this Court, finding that this Court's Order dismissing the Original Complaint left the Amended Complaint unaddressed. *Id.* Subsequently, Plaintiff filed a Second Amended Complaint. (ECF No. 36.) On November 2, 2017, Defendant filed a Motion to Dismiss the Second Amended Complaint, arguing in part that Plaintiff still has not established subject matter jurisdiction. (ECF No. 38.) Also currently pending before this Court is Defendant's Motion for Leave to File a Reply to Plaintiff's Opposition. (ECF No. 42.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Defendant's Motion to Dismiss (ECF No. 38) is GRANTED and Defendant's Motion for Leave to File a Reply (ECF No. 42) is DENIED AS MOOT.

## BACKGROUND

Plaintiff Fawzy is a citizen of the State of Massachusetts. (Second Am. Compl., ECF No. 36 at ¶ 2.) Defendant Wauquiez is "a foreign business entity duly organized and existing under the laws of France." (*Id.* at ¶ 3.) Around June 15, 2011, Plaintiff entered into a contract with Defendant "to build a PILOT SALOON 55 vessel" (the "Vessel"). (*Id.* at ¶ 4.) At the same time, the parties entered into an "Addendum to Sales Contract" that "provided for certain amendments and modifications to the terms of the contract that required certain continuing obligations of both parties." (*Id.* at ¶ 5.) These obligations included that the delivery of the Vessel by Wauquiez to Fawzy would be at Port St. Louis du Rhone, France. (ECF No. 1-1.) Further, Fawzy agreed that the Vessel would be available to Wauquiez for participation in the Genoa Boat Show at Genoa, Italy and the Cannes Boat Show in Cannes, France. (*Id.*) After participation in the shows, Wauquiez would "redeliver" the Vessel to

2

Fawzy. (*Id.*)

In September of 2011, Fawzy made the final payment to Wauquiez for the Vessel. (*Id.* at ¶ 7.) However, Wauquiez never delivered the Vessel to Fawzy prior to the shows. (*Id.* at ¶ 8.) Rather, the Vessel was not delivered to Fawzy until December of 2011. (*Id.* at ¶¶ 10-11.) Fawzy claims that when Wauquiez delivered the Vessel to Fawzy, Wauquiez knew that there were "some problems" with the Vessel and that it was potentially unsafe for Fawzy to sail it back across the Atlantic Ocean to Boston, Massachusetts. (*Id.* at ¶¶ 12-13.) On his travels home, Fawzy and his crew then "experienced a calamitous failure of the boom that subjected them to a near death experience" when "[t]he boom and main sail were rendered inoperable, and the Vessel was forced to drift at the mercy of the Atlantic Ocean for much of the remainder of the voyage." (*Id.* at ¶ 14.) Despite Wauquiez's periodic attempts over the next three years to address various defects with the Vessel, the problems persisted. (*Id.* at ¶¶ 16-19.) Subsequently, Fawzy retained counsel who "authored a demand letter" to Wauquiez on August 30, 2013. (*Id.* at ¶ 20.) After Wauquiez did not respond, Fawzy filed suit in France for breach of the Sales Contract, breach of warranty, negligent design and construction, strict liability, and "metal distress." (*Id.* at ¶ 22.) As of the time of the filing of the Second Amended Complaint in this case, that suit was still pending. (*Id.* at ¶ 24.)

On October 6, 2016, Plaintiff Fawzy brought an "admiralty and maritime" action in this Court against Defendant Wauquiez, pursuant to 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure, alleging "a claim for the breach of maritime contract, for products liability under the general maritime law, and pursuant to admiralty tort jurisdiction." (Verified Compl., ECF No. 1 at ¶ 1.) At Plaintiff's request, this Court issued an

Order of Issuance of Process of Maritime Attachment (ECF No. 4), authorizing the United States Marshals Service to seize the Vessel. This Court also entered an additional Order appointing the Master and crew of the Wauquiez Vessel located in Annapolis, Maryland as the Substitute Custodian. (ECF No. 5.) Subsequently, Defendant filed a Motion to Dismiss the Verified Complaint, Dissolve Orders of Attachment and Appointing Substitute Custodian, Release Vessel, and For Sanctions, Attorneys Fees, Costs, and Damages. (ECF No. 12.) On October 12, 2016, this Court held a hearing on the Motion to Dismiss pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims Federal Rule of Civil Procedure.

Two days later, on October 14, 2016, this Court issued a Memorandum Opinion and Order dismissing Plaintiff's Complaint for lack of jurisdiction, denied Defendant's request for sanctions, and closed this case. *Fawzy v. Wauquiez Boats SNC*, 2016 WL 6031940, No. RDB-16-3363 (D. Md. Oct. 14, 2016). Unbeknownst to this Court, however, roughly an hour before issuing the Memorandum Opinion and Order, Plaintiff filed an Amended Complaint under Federal Rule of Civil Procedure 15. (ECF Nos. 17, 19, 20.) Rather than alerting this Court, Plaintiff filed an appeal to the United States Court of Appeals for the Fourth Circuit. *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451 (4th Cir. 2017). On appeal, the Fourth Circuit determined that Fawzy had properly filed his Amended Complaint as a matter of right under Federal Rule of Civil Procedure 15, "render[ing] the original complaint 'of no effect.'" *Id.* at 455 (quoting *Young v. City of Mt. Rainer*, 238 F.3d 567, 573 (4th Cir. 2001)). Accordingly, the court held that "[b]ecause the district court's order dismissing the original complaint left the operative complaint unaddressed, the order was not a final order, but

rather an interlocutory one, and we have no appellate jurisdiction to review it." *Id.* (citing 28 U.S.C. § 1291 (conferring jurisdiction to the United States Courts of Appeals for "all *final* decisions of the district courts of the United States," subject to certain exceptions) (emphasis added)).

After the Fourth Circuit dismissed Plaintiff's appeal, this Court entered an Order directing the Plaintiff to file a Second Amended Complaint. (ECF No. 35.) The Order further set deadlines for Defendant's Response and Plaintiff's Reply. (*Id.*) On October 25, 2017, Plaintiff filed his Second Amended Complaint, alleging breach of maritime contract/charter party (Count I), strict products liability (Count II), negligent design and construction of vessel (Count III), failure to warn under general maritime law (Count IV), intentional misrepresentation (Count V), intentional infliction of emotional distress (Count VI), and negligent infliction of emotional distress under general maritime law (Count VII). He seeks a total reward of $1,746,103.42 for the cost of the Vessel's purchase price, various other expenses, prejudgment interest, legal expenses and costs, and monetary damages for personal injury and emotional distress. (*Id.* at ¶¶ 25-30.) Subsequently, Defendant filed a Motion to Dismiss. (ECF No. 38.) After Plaintiff filed a Response in Opposition (ECF No. 41), Defendant filed a Motion for Leave to File a Reply to the Opposition (ECF No. 42).

**STANDARD OF REVIEW**

Under 28 U.S.C. § 1333, United States District Courts have original and exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1); *see also* U.S. Const. art. III, § 2, cl. 1 ("The judicial power shall extend to . . . all Cases of admiralty and maritime Jurisdiction."). A motion to dismiss under Rule 12(b)(1) for lack of

5

subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D. Md. 2005). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. *Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).

## ANALYSIS

Preliminarily, Defendant has filed a Motion for Leave to File a Reply to Plaintiff's Opposition. (ECF No. 42). Following the Fourth Circuit's remand, this Court held a teleconference with the parties. As a result of the teleconference, this Court issued an Order directing that after Plaintiff filed his Second Amended Complaint, Defendant would have the opportunity to file a Response and Plaintiff a Reply to that Response. (ECF No. 35.) No further reply was contemplated by this Court, notwithstanding the fact that Defendant filed its Response in the form of a Motion to Dismiss. In light of the fact that the Defendant's Motion to Dismiss shall be GRANTED for the reasons set forth, the Defendant's Motion for Leave to File a Reply to Plaintiff's Opposition (ECF No. 42) is DENIED AS MOOT.

Addressing the Defendant's Motion to Dismiss, Wauquiez argues, once again, that Plaintiff has not established maritime jurisdiction as required for this Court to exercise

6

jurisdiction.[1] As subject matter jurisdiction is a threshold issue, this Court must first address whether the Second Amended Complaint establishes maritime jurisdiction.

Defendant argues that maritime jurisdiction does not apply to Plaintiff's claim because "[t]his action is a breach of warranty claim of a contract to build a pleasure vessel" and, accordingly, "[t]his Court has no subject matter jurisdiction to hear a contract dispute over the sale or construction of a vessel." (ECF No. 38 at 7.) As the Fourth Circuit held in *Flota Maritima Browning de Cuba v. Snobl*, 363 F.2d 733, 735 (4th Cir. 1966), "the prevailing rule has been that a contract for the sale of a ship is not a maritime contract." The Fourth Circuit subsequently affirmed this rule in *Magnolia Ocean Shipping Corp. v. M/V Mercedes Maria*, 644 F.2d 880, 1982 A.M.C. 731 (4th Cir. 1981), when it affirmed the district court's dismissal of the plaintiff's claims for lack of maritime jurisdiction because the claims depended upon the establishment of the contract for the sale of a vessel. More recently, this Court reaffirmed that "[i]t is well established that the contract for the sale of a yacht is a non-maritime contract." *Ace American Ins. Co. v. Grand Banks Yachts, Ltd.*, 587 F.Supp.2d 697, 2008 A.M.C. 2846, 2853 (D. Md. 2008) (citations omitted).

Plaintiff argues, however, that the contract in this case qualifies as an exception to the rule because there was a charter agreement between the parties. According to Plaintiff, "[b]ased on the language of the Addendum, a bareboat charter arrangement is precisely what was envisioned by the parties when they executed the Addendum to the Sales Contract on June 15, 2011." (ECF No. 41 at 11.) While "[t]he charter of a vessel . . . is maritime," *Flota*,

---

[1] Defendant also argues that this Court does not have personal jurisdiction over Wauquiez Boats, Plaintiff's claims are barred by the statute of limitations, and Plaintiff has failed to state his claims. Because this Court does not have subject matter jurisdiction over this case, it does not reach these additional arguments.

363 F.2d at 735, the parties did not enter into a charter agreement. First, the Addendum upon which the Plaintiff relies is simply titled "Addendum to Sales Contract" and does not include the word "charter." (ECF No. 1-1.) Second, the circumstances surrounding the Addendum do not imply that Defendant was a charter party. Plaintiff relies on *St. Paul Fire & Marine Ins. Co. v. Vest Transp. Co., Inc.*, 500 F.Supp. 1365, 1372 (N.D. Miss. 1980) for the proposition that "a charter party may be implied from circumstances concerning the actual possession and use of a vessel." However, as clarified at this Court's hearing on Defendant's initial Motion to Dismiss in 2016, the parties did not enter into a charter agreement and counsel for Plaintiff acknowledged that this was not his strongest argument. *Fawzy*, 2016 WL 6031940 at *2806, 2806 n. 5. Rather, Defendant showed the Vessel at the boat shows prior to Plaintiff taking delivery of the Vessel. Accordingly, there was not a charter agreement between the parties.

Plaintiff also attempts to establish maritime jurisdiction by arguing that his tort claims provide a basis for admiralty jurisdiction. In *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 106 S.Ct. 2295 (1986), the United States Supreme Court held that "whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss." *Id.* at 876. Plaintiff contends that he suffered non-economic injuries when "he and his crew experienced a calamitous failure of the boom that subjected them to a near death experience," and when during an inspection of the Vessel a Captain was "knocked to the deck, was nearly thrown in the water, and was injured by the boom." (ECF No. 41.)

As to the first alleged injury, the Supreme Court specifically considered in *East River* one Court of Appeals' theory that the economic loss rule should "permit recovery for a 'near miss,' where the risk existed but no calamity occurred." 476 U.S. at 862, 106 S.Ct. 2295. The Court rejected this approach, however, explaining that "[t]he intermediate positions, which essentially turn on the degree of risk, are too indeterminate to enable manufacturers easily to structure their business behavior." *Id.* at 870. Accordingly, Plaintiff cannot rely on being subjected to a "near death experience," where no injury occurred. Second, Plaintiff also cannot rely on the Captain's injury as it is the type of common injury that occurs on sailboats rather than the type of tort injury envisioned in *East River*. *See East River*, 476 U.S. at 868 ("But the injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain.").

Plaintiff's reliance on *Marshall v. Wellcraft Marine, Inc.*, 103 F.Supp.2d 1099 (S.D. Ind. 1999) is also misplaced. In that case, the plaintiff suffered both personal property loss and "testified that he sustained physical injury *from electrical shocks* while attempting to prevent [his ship] from sinking." *Id.* at 1111 (emphasis added). Here, Fawzy suffered no such injury. Moreover, when ruling on the motion for summary judgment, the court then explained that "we are not prepared to characterize electrical shocks as the type of physical harm that eludes tort recovery. Ultimately, a jury must make the determination as to the degree of physical injury experienced by [the plaintiff]." *Id.* at 1112. Accordingly, the court declined to hold whether physical injury from electrical shocks—amounting to a greater injury than

alleged here—is in fact the type of injury sufficient to establish a claim under admiralty law.[2] Given that Plaintiff has failed to establish maritime jurisdiction, Defendant's Motion is GRANTED and the Second Amended Complaint is DISMISSED.

**CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 38) is GRANTED and Defendant's Motion for Leave to File a Reply (ECF No. 42) is DENIED AS MOOT.

A separate order follows.


Dated: April 18, 2018

                                                                                            /s/

                                                              Richard D. Bennett
                                                              United States District Judge

---

[2] Plaintiff also cites, among other cases, *Smith v. Mitlof*, 198 F.Supp.2d 492 (S.D.N.Y. 2002) for the proposition that if the defendant "knew or had reason to know that, as a result of the vessel's latent defects and limitations, the [vessel] would be dangerous for [plaintiff's] intended use, and had reason to believe that [plaintiff] would not discover these defects, it could be found liable . . for failure to warn." *Id.* at 503. However, in *Smith* the vessel actually "*capsized* . . . causing serious injuries to all plaintiffs." *Id.* at 497.